UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   17-24516-CV-WILLIAMS
MAGISTRATE JUDGE REID

COREY C. CHARLTON,

     Petitioner,

v.

MARK INCH,

     Respondent.

_____/

## CORRECTED REPORT OF MAGISTRATE JUDGE

### I. Introduction

This Cause is before the Court upon Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions and sentences, following a jury trial, in Case No. F10-35542 entered in the state circuit court in and for Miami-Dade County, Florida. [ECF No. 1].

This Cause has been referred to the Undersigned for consideration and report, pursuant to S.D. Fla. Admin. Order 2019-02. [ECF No. 2]. For the reasons detailed below, the Petition should be denied.

## II. Claims

Construing the arguments liberally, as afforded to *pro se* litigants pursuant to

*Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Petitioner raised the following

claims:

1. Trial counsel was ineffective for advising Petitioner not to testify at trial;

2. Trial counsel was ineffective for not filing a timely motion for a new trial alleging that the verdict was contrary to the weight of the evidence;

3. Trial counsel was ineffective for presenting a defense that was inconsistent with his post-*Miranda*[1] statement to police;

4. Trial counsel's cumulative errors, as alleged through Grounds One through Three, demonstrate that trial counsel was ineffective;

5. Appellate counsel failed to argue that the trial court abused its discretion by denying a motion for mistrial, alleging the prosecution made improper comments thereby shifting the burden of proof onto Defendant during opening statements;

6. Appellate counsel was ineffective for failing to challenge the trial court's response to a jury request for a transcript;

7. Appellate counsel was ineffective for failing to challenge the denial of the second motion for mistrial, which was based on lay witness's opinion testimony as to Petitioner's guilt, specifically the victim's mother;

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

8. The state circuit court erred in denying or dismissing Petitioner's actual-innocence claim based on newly discovered evidence;

9. The trial court committed reversible error by allowing *Williams* rule evidence to be admitted;[2]

10. The circumstantial evidence against Petitioner was legally insufficient.

[ECF No. 1].

### III. Pertinent Factual and Procedural Background

A. <u>Facts Adduced at Trial</u>

Petitioner and Ms. Trenecia Clowers, the victim ("Trenecia"), had a romantic relationship that resulted in two children. [ECF No. 22-3 at 8-9]. After the birth of their second child, Trenecia moved back in with her mother, Ms. Ina Clowers ("Ms. Clowers"). [*Id.* at 8-11]. Ms. Clowers testified that Petitioner was not allowed into her home because he and Trenecia would "fuss and fight" regularly. [*Id.* at 12]. Ms. Clowers described one occasion where Trenecia confronted Petitioner about an affair he was having. [*Id.* at 16]. Trenecia threatened to tell the other woman that Petitioner was in a relationship, and Petitioner responded he would "f[ ] her up" if she did. [*Id.* at 16-17]. Trenecia responded by saying she would "F him up." [*Id.*].

---

[2] Under Florida law, similar fact evidence of other crimes, referred to as *Williams* Rule evidence, "is admissible when relevant to prove a material fact in issue" such as motive, intent, preparation or plan. Fla. Stat. § 90.404(2)(a); *see also Tejada v. Dugger*, 941 F.2d 1551, 1561 n.17 (11th Cir. 1991) (citing *Williams v. State*, 110 So. 2d 654 (Fla. 1959)).

About a month later, in November 2010, Ms. Clowers witnessed another argument between the couple with similar threats. [*Id.* at 16-18].

On December 13, 2010, Petitioner paced the sidewalk across the street from Ms. Clowers's home at 1:00 p.m. [*Id.* at 18]. Later, at 5:00 p.m., Petitioner sat in his car, parked outside the gate of Ms. Clowers's home. [*Id.* at 18-20]. Ms. Clowers approached him and asked the location of her daughter, and Petitioner answered he did not know but was waiting for her. [*Id.* at 20]. Trenecia arrived home with the two girls, and Petitioner knocked on the door soon after. [*Id.* at 20-21]. Ms. Clowers retreated to her room, where she heard the couple arguing about $45 and cursing at each other within her home. [*Id.* at 21].

Later in the evening, Trenecia sat outside on the front porch. [*Id.* at 23]. While inside of her home, Ms. Clowers heard three or four shots. [*Id.*]. Knowing her daughter was outside, she ran to the door while calling out to her daughter. [*Id.*]. There was no response. [*Id.*]. Ms. Clowers looked out the window and ran to the front gate where her daughter laid dead on the ground. [*Id.* at 24]. Petitioner was standing beside her gazing his eyes towards the other side of the street. [*Id.*]. Ms. Clowers did not see Petitioner's hands. [*Id.* at 26].

Ms. Clowers spoke with the 911 dispatcher as she looked out the window watching Petitioner. [*Id.* at 26]. Petitioner stood there and then returned to his vehicle, where he waited a few minutes before moving his car pass Ms. Clowers's

4

home. [*Id.* at 27]. During this event, Ms. Clowers never saw any other vehicles pulling in or driving by the area. [*Id.*].

A medical examiner testified that Trenecia sustained three gunshot wounds. [ECF No. 22-5 at 41]. One bullet grazed across her forehead from left to right, another went through the soft tissue of Trenecia's arm. [*Id.* at 41-42]. The third gunshot wound pierced the back of the left side of Trenecia's head. [*Id.* at 42]. The bullet was extracted from inside Trenecia's head. [*Id.*].

The medical examiner opined that the gunshot wound to the head was first and the other two gunshot wounds could have occurred in either sequence. [*Id.* at 53]. He further opined that the gunshot came from directly above Trenecia with the left side of her face upwards while her right side was to the ground. [*Id.* at 54]. The medical examiner agreed it was not "reasonable to believe" that the gunshot wounds came from a distance as opposed to coming from up close. [*Id.* at 55]. Given the concrete dust found on the side of Trenecia's face and in her hair, and the fact that the projectile was in her hair on the ground, the medical examiner explained the graze shot to her forehead was at close proximity. [*Id.* at 54-55].

Detective Michael Bajdic testified that he arrived at the scene, where there were no civilian witnesses or on-lookers. [ECF No. 22-4 at 59]. Two casings were found just southeast from Trenecia's body. [*Id.* at 92]. Casings were not found in the lot across the street. [*Id.* at 111]. He did not believe there was any evidence

suggesting the incident occurred anywhere beyond the immediate area where the victim was found. [*Id.* at 88]. To support that conclusion, Detective Bajdic walked up to the various residences, looked inside the yards, and observed no evidence of structural damage caused by bullets or of casings beyond the victim's immediate area. [*Id.*]. Detective Margaret Grossman, however, documented that there were four ricochet marks on the driver's side hood of a Ford Taurus approximately twelve feet from the victim. [ECF No. 22-4 at 165-67]. She explained that she documented these ricochet marks because "they seemed so out of place" and she could not confirm whether those ricochet marks were caused by gunfire or something else. [*Id.* at 166-67].

Law enforcement took Petitioner into custody. [ECF No. 22-5 at 84]. He waived his *Miranda* rights. [*Id.* at 84-97]. Initially, according to Detective Richard Rafael's testimony describing the interview, Petitioner denied involvement in the crime. [*Id.* at 99-100] ("Nothing happened."). Upon being asked about the last time he saw Trenecia, Petitioner said she was standing when he left her house. [*Id.* at 100]. In response to being asked whether he shot and killed Trenecia, Petitioner said he "can't have a gun." [*Id.* at 101].

The defense relied upon some additional facts to support an inference that Trenecia's death may have been the result of a drive-by shooting or someone else with a motive to kill her. In support, the defense relied upon the fact that Trenecia

6

was found with a purse containing $345. [ECF No. 22-4 at 105]. Ms. Clowers testified that Trenecia would sit outside by the sidewalk almost every evening until midnight holding her purse. [ECF No. 22-3 at 37-38]. The medical examiner testified that Trenecia's body tested positive for ecstasy and cocaine. [ECF No. 22-5 at 66-67]. Further, gun powder residue was not found on Petitioner's hands or on his steering wheel. [ECF No. 22-4 at 121-28]. Miami-Dade County Police confirmed that some of the casings found on the scene were discharged from the same firearm used in a July 19, 2009 drive-by shooting. [ECF No. 22-5 at 103-07]. Detective Rafael said this fact did not impact his decision even though Petitioner was in state custody on July 19, 2009 because firearms are regularly sold on the streets. [*Id.* at 105-07]. Taken together, during closing argument, the defense suggested Trenecia made enemies in the process of buying or selling uncontrolled substances or was otherwise a bystander in a drive-by shooting. [ECF No. 22-7 at 36-61].

B. Procedural History

Following the jury trial, Petitioner was convicted of second-degree murder with the use of a firearm and sentenced to 35 years' imprisonment with a 25-year minimum mandatory sentence. [ECF No. 21-3 at 5, 7-12]. Petitioner appealed. [*Id.* at 14]. In a silent opinion, the Florida Third District Court of Appeal (Third DCA) affirmed the judgement and sentence on February 18, 2015. *Charlton v. State*, 160

So. 3d 436 (Fla. 3d DCA 2015); [ECF No. 21-4 at 22]. No other challenges were made on direct review.

On July 15, 2015, Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850. [ECF No. 21-4 at 24-34]. The state circuit court denied all claims. [ECF No. 21-5 at 2-11]. Although Petitioner appealed, [*Id.* at 15], the Third DCA affirmed the denial in a silent opinion. *Charlton v. State*, 187 So. 3d 1248 (Fla. 3d DCA 2016); [ECF No. 21-5 at 32]. Petitioner filed a motion for rehearing with a request for a written opinion, [ECF No. 21-5 at 34-37]; however, it was denied. [*Id.* at 39]. The mandate issued on April 4, 2016. [*Id.* at 41].

Petitioner filed another Rule 3.850 motion for postconviction relief on May 3, 2016. [*Id.* at 43-49]. The state circuit court denied relief as to those claims. [*Id.* at 62-68]. Petitioner appealed to the Third DCA, [*Id.* at 70-71], but the state circuit court's decision was affirmed in a silent opinion. *Charlton v. State*, 208 So. 3d 712 (Fla. 3d DCA 2016); [ECF No. 21-5 at 73]. Petitioner filed a motion for rehearing *en banc*. [ECF No. 21-5 at 75-77]. The motion was denied. [*Id.* at 79]. The mandate issued on December 27, 2016. [*Id.* at 81].

On March 3, 2017, Petitioner filed a petition for writ of habeas corpus alleging ineffective assistance of appellate counsel in the Third DCA pursuant to Fla. R. App. P. 9.141(d). [ECF No. 21-6 at 2-36]. Without a written opinion, the Third DCA

denied relief on November 15, 2017. [*Id.* at 91]. Further review on this petition was not pursued in the state courts.

The instant Petition was filed on December 13, 2017. A Magistrate Judge previously recommended that this case be dismissed as time-barred, and the case was closed pursuant to that recommendation. [ECF Nos. 5; 7]. However, after Petitioner filed a motion pursuant to Fed. R. Civ. P. 60(b), the Magistrate Judge recommended that the motion be granted, and the case be reopened because the previous report did not factor in the tolling effect of Petitioner's habeas corpus petition in the Third DCA. [ECF No. 17]. After accounting for the tolling effect of that state court filing, it revealed an error—an incorrect determination in finding the Petition untimely. [*Id.*]. The Court adopted the recommendations, granted the motion, and reopened this case for further proceedings. [ECF No. 18].

## IV. Timeliness

Stated broadly, an application for a writ of habeas corpus under 28 U.S.C. § 2254 must be filed before a 1-year limitations period expires, and this limitation period usually runs from the date the challenged judgment became "final." 28 U.S.C. § 2244(d). In this case, Respondent does not dispute timeliness of the Petition. [ECF No. 21 at 10]. Further, the Court, pursuant to a Rule 60(b) motion, determined that the Petition was filed timely. [ECF Nos. 17; 18]. As such, the Petition is timely.

## V. Exhaustion

Pursuant to 28 U.S.C. § 2254(b)-(c), petitioners must exhaust their claims before presenting them in a federal habeas petition. When petitioners do not properly present their claims to a state court by exhausting those claims and complying with the applicable state procedure, § 2254 may bar federal review of those claims in federal court. *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (relying upon 28 U.S.C. § 2254(b)-(c)).

In this case, with the exception of Grounds Eight through Ten, Respondent concedes that the claims have been exhausted. [ECF No. 21 at 13, 16, 21, 25, 26, 29, 31-32, 34-35, 38, 40]. Thus, any potential exhaustion defenses that existed as to Grounds One through Seven were waived. *See* 28 U.S.C. § 2254(b)(3).

As shall be explained in further detail later, however, the Court need not address whether Petitioner failed to exhaust Ground Eight because the claim is simply not cognizable for federal habeas review. *See* 28 U.S.C. § 2254 (b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). However, as Respondent correctly argues and as shall be explained, Grounds Nine and Ten were not properly exhausted.

10

## VI. Standard of Review

Several limits exist on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The most restrictive limit is that found in § 2254(d). As amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), pursuant to § 2254(d), a federal court may grant habeas relief from a state court judgment only if the state court's decision on the merits of the issue was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' federal law if the 'state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 844 (11th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)) (internal brackets omitted). A state court's decision involves an unreasonable application of federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Consalvo*, 664 F.3d at 844 (quoting *Williams*, 529

11

U.S. at 413). Importantly, AEDPA's deferential standard under § 2254(d) applies only whenever state court proceedings adjudicated a claim on the merits. *See Cullen*, 563 U.S. at 181.

To qualify as an adjudication on the merits, very little is required. In fact, federal courts should presume that § 2254(d)'s deference applies. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 99 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Even where there was a summary denial and no reasons for the denial of relief were articulated by the state trial court, such a ruling is also presumed to be an adjudication on the merits. *Id.* at 100; *see also Gill v. Mecusker*, 633 F. 3d 1272, 1288-89 (11th Cir. 2011) (acknowledging the well-settled principle that summary affirmances are presumed adjudicated on the merits and warrant deference).

"The presumption [in favor of a merits ruling existing] may be overcome" only "when there is reason to think some other explanation for the state court's decision is more likely." *Richter*, 562 U.S. at 99-100 (relying upon *Ylst v. Nunnemarker*, 501 U.S. 797, 803 (1991)).

Recently, in *Wilson v. Sellers*, 138 S. Ct. 1188, 1192-94 (2018), the Supreme Court held there is a "look through" presumption in federal habeas corpus law, as

silence implies consent. This means federal courts should rely upon the "last related state-court decision" that provides a relevant rationale when the highest state court's adjudication on the merits of a claim is unaccompanied by an explanation. *See id.* at 1192. Put into practice, *Wilson* clarifies the reasoning that is presumptively afforded § 2254(d)'s deference.

Federal courts may also deny § 2254 petitions if the claims would fail under *de novo* review, a more favorable standard, as a habeas petitioner would surely not be entitled to a writ under § 2254(d) if their claim would fail under that standard. *See, e.g.*, *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010); *see also Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014). In doing so, federal courts may decline to resolve whether § 2254(d) applies. *See Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1109-10 (11th Cir. 2012).

## VII. Discussion

A. <u>Generally Applicable Substantive Law</u>

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate both (1) that his counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An ineffective assistance of counsel claim may be raised with respect to errors made by trial counsel or direct appeal counsel, and both are governed by *Strickland*. *See, e.g.*, *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016).

The deficiency prong is met if no competent counsel would have taken the action that trial counsel took during the proceedings. *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000). Regarding the prejudice prong, it is met if, but for counsel's deficient performance, the outcome of the proceeding would have been favorable. *Strickland*, 466 U.S. at 694. And yet, the error must also be "so serious" that the error "deprive[d] the defendant of a fair trial, a trial whose result is reliable[,]" in order to satisfy the prejudice prong. *Strickland*, 466 U.S. at 687.

B. Ground One

In Ground One, Petitioner contends his trial counsel was ineffective for advising him not to testify at trial. [ECF No. 1 at 5]. This claim was raised in a Rule 3.850 motion. [ECF No. 21-4 at 25-28]. At the trial court level, the claim was denied by finding that Petitioner failed to prove trial counsel's performance was deficient

and that Petitioner's failure to testify prejudiced him. [ECF No. 21-5 at 8-9]. In addressing the first prong, the trial court explained that counsel's advice was not deficient because counsel merely advised Petitioner of the risks associated with testifying, namely cross-examination and impeachment. [*Id.*]. Additionally, the record demonstrated that Petitioner chose not to testify and had sufficient time to consider whether he wanted to do so after a consultation with his attorney. [*Id.*]. With respect to the second prong, the trial court relied, in part, on the testimony of the victim's mother and Petitioner's post-*Miranda* statement to the police in order to consider Petitioner's involvement or lack thereof regarding the death of the victim. [*Id.*]. The Third DCA affirmed the denial on appeal. [*Id.* at 32].

Thus, the claim was presumptively adjudicated on the merits and subject to § 2254(d)'s additional limitation. *See Richter*, 562 U.S. at 99-100. Based on the Third DCA's affirmance without a written opinion, this Court presumes that it adopted the reasoning below. *See Wilson*, 138 S. Ct. at 1195-97.

"[A] criminal defendant has a fundamental constitutional right to testify in his or her own behalf at trial." *United States v. Teague*, 953 F.2d 1525, 1530-32 (11th Cir. 1992) (en banc) (emphasis omitted). Whether a defendant testifies "is ultimately for the defendant himself to decide" and "[d]efense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify."

15

*Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1129 (11th Cir. 2012) (quoting *Teague*, 953 F.2d at 1533) (internal quotation marks omitted).

Petitioner did not assert that his attorney failed to advise him about his right to testify. Instead, he challenges counsel's advice that it was in his best interest not to do so. The trial transcript reflects that counsel explained he spoke with Petitioner and that Petitioner was "pretty clear" in expressing his desire not to testify. [ECF No. 22-5 at 130]. Under oath, Petitioner confirmed that he had enough time to speak with his attorney and that counsel's advice was based upon counsel's belief of what was in Petitioner's best interest. [*Id.* at 132]. Petitioner also swore that he understood that it was his decision whether he testified and stated that he voluntarily chose not to do so. [*Id.* at 132-33].

Given this record, the Third DCA's presumptive resolution of the deficiency prong was not contrary to or an unreasonable application of the deficiency prong in violation of § 2254(d). The Court need not address the prejudice prong on this claim. *See Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1100 (11th Cir. 2007).

C. <u>Ground Two</u>

In Ground Two, Petitioner claims his trial counsel was ineffective for not filing a timely motion for a new trial alleging that the verdict was contrary to the weight of the evidence. This claim was raised in Petitioner's Rule 3.850 Motion, [ECF No. 21-4 at 28-30], denied in the state circuit court, [ECF No. 21-5 at 9], and

affirmed on appeal in the Third DCA. [*Id.* at 32]. As the Third DCA did not provide a written opinion, the denial was presumptively an adjudication on the merits. *See Richter*, 562 U.S. at 99-100. Pursuant to *Wilson v. Sellers*, the state circuit court's reasoning is presumptively the reasoning of the Third DCA's affirmance on appeal. *See Wilson*, 138 S. Ct. at 1195-97.

In denying this claim, the state circuit court explained that failure to file a motion for new trial is not grounds to find counsel automatically ineffective and further concluded that the motion would likely have been denied based upon "the trial court's ruling on the two defense motions for judgment of acquittal." [ECF No. 21-5 at  9]. Further, the state circuit court concluded that the Third DCA considered the weight and sufficiency of the evidence on direct appeal indicating that the motion for new trial alleging the evidence did not meet the state's evidentiary burden would have failed. [*Id.*].

Even if Petitioner's counsel had filed a timely motion for new trial, Petitioner is unable to prove that the Third DCA's presumptive reasoning was contrary to or an unreasonable application of clearly established federal law as it relates to the prejudice prong of his *Strickland* claim. Here, Petitioner did not prove a reasonable probability that the motion would have been granted while in state court, revealing he has not met his burden on § 2254(d) in this Court. The Court need not address the deficiency prong. *See Dingle*, 480 F.3d at 1100.

D. Ground Three

In Ground Three, Petitioner contends trial counsel was ineffective for presenting a defense that was inconsistent with his post-*Miranda* statement to police. [ECF No. 1 at 8]. As a reminder, Petitioner's statement to police was that the victim was alive and standing when he left her. To support his claim, Petitioner asserts that trial counsel's theory of the case was inconsistent in light of the testimony provided by the state's witnesses, namely Ms. Clowers and the medical examiner. [*Id.*].

In denying this claim, the state circuit court explained that the defense's theory of the case was that the victim died as a result of a drive by shooting. [ECF No. 21-5 at 9-10]. The defense also relied upon the fact that there were bullet ricochet marks on a car parked near the victim and that the victim had a substantial amount of money in her possession when she was killed. [*Id.*]. As the Third DCA's affirmance did not contain a written opinion, the Court must presume its affirmance adopted the reasoning of the state circuit court. *See Wilson*, 138 S. Ct. at 1195-97. As such, given the unwritten opinion and the reasoning below, the claim was presumptively adjudicated on the merits and is subject to § 2254(d). *See Richter*, 562 U.S. at 99-100.

The record confirms that trial counsel's sole theory of the case was that the victim died of a drive-by gun shooting. This would have been consistent with Petitioner's statement that the victim was alive when he left her. The mere fact that

18

the victim's mother and Dr. Radke's opinion painted a different picture of what transpired does not mean trial counsel acted deficiently. The record confirms and the state circuit court were correct in concluding that trial counsel made a strategic decision in pursuing this approach. Because Petitioner has not proven that no defense attorney would have pursued that defense given the facts presented at trial, trial counsel's strategic decisions fail to prove deficient performance. *See Strickland*, 466 U.S. at 687-91 (explaining strategic choices by counsel do not satisfy the deficiency prong unless no attorney would have made that strategic choice). Petitioner, therefore, has not met his burden under § 2254(d) as it relates to the deficiency prong. The Court need not address the prejudice prong. *See Dingle*, 480 F.3d at 1100.

E. Ground Four

In Ground Four, Petitioner contends trial counsel's cumulative errors, as alleged through Grounds One through Three, demonstrate that trial counsel was ineffective. [ECF No. 1 at 10]. The Court need not resolve whether § 2254(d) applies because the claim would fail even under *de novo* review. *See Trepal*, 684 F.3d at 1109-10.

"The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005) (quoting *United States v.*

*Munoz*, 150 F.3d 401, 418 (5th Cir. 1998)) (internal quotation marks omitted). However, the Eleventh Circuit has assumed, without deciding, that such claims are cognizable in the habeas context. *See Morris v. Sec'y, Fla. Dep't of Corr.*, 677 F.3d 1117, 1132 n.3 (11th Cir. 2012).

Even assuming the instant claim was cognizable for federal habeas review, Petitioner failed to show any of those grounds meet the standard to prove the aggregation of trial counsel's errors deprived him of a fair trial. *See Hill v. Sec'y, Fla. Dep't of Corr.*, 578 F. App'x 805, 810 (11th Cir. 2014). Petitioner failed to show any plain error by counsel on the previously mentioned claims. The claim should, therefore, be denied.

F. Ground Five

In Ground Five, Petitioner claims appellate counsel failed to argue that the trial court abused its discretion by denying a motion for mistrial alleging the prosecution made improper comments thereby shifting the burden of proof onto Defendant during opening statements. [ECF No. 1 at 15]. Again, the Court need not resolve whether § 2254(d)'s additional limitation applies to this claim, as the claim could not prevail under *de novo* review. *See Trepal*, 684 F.3d at 1109-10.

At trial, defense counsel objected multiple times to the state's opening statements. [ECF No. 22-2 at 132, 137-42]. The objections were primarily because the state prosecutor repeatedly stated that something transpired as a matter of fact as

20

opposed to framing the opening as to what the evidence will show at trial. [*Id.*]. Before opening statements, the trial judge instructed as follows: "Please remember what the lawyers say is not evidence. But, please listen closely to their statements as they are meant to guide you in what they believe the evidence will show." [*Id.* at 130]. After sustaining several objections [*Id.* at 138-40, 142], curative instructions were read to the jury. [*Id.* at 132, 142]. Although Petitioner's counsel moved for a mistrial, the motion was denied. [*Id.* at 143-44]. During a sidebar, the trial court warned the state prosecutor that he had "come very close to [shifting] the burden of proof" and that the trial court had repeatedly stopped him from doing so. [*Id.*]. Afterwards, the trial judge instructed the jury as follows: "Ladies and gentlemen, I will remind you that what the attorneys say is not evidence. The evidence comes from the witness stand." [*Id.* at 144]. No further objections were made.

Axiomatically, "[a]n opening statement gives counsel the opportunity to state what evidence will be presented in order to make it easier for the jurors to understand what is to follow, and is not an occasion for argument." *United States v. Lizon-Barias*, 252 F. App'x 976, 978 (11th Cir. 2007). Juries, of course, are presumed to "follow their instructions to disregard specific remarks" *Hammond v. Hall*, 586 F.3d 1289, 1334 (11th Cir. 2009). "By the same token, attorneys reasonably can rely on that presumption." *Id.* Thus, because Petitioner's appellate counsel "could reasonably proceed on the premise that the jury disregard[ed a prosecutor's

remark]," *see id.*, Petitioner's appellate counsel did not perform deficiently. *See, e.g.*, *Johnson v. Alabama*, 256 F.3d 1156, 1188 (11th Cir. 2001) (concluding a petitioner's appellate attorney was not deficient for winnowing out arguments that were viewed as less persuasive).

As to the prejudice prong, Petitioner cannot show a reasonable probability of a different outcome on appeal. Under Florida law, motions for mistrial should be granted if "an error is so prejudicial [that it] vitiate[s] the entire trial." *Salazar v. State*, 991 So. 2d 364, 372 (Fla. 2008) (quoting *England v. State*, 940 So. 2d 389, 401-02 (Fla. 2006)). On appeal, "[a] trial court's ruling on a motion for mistrial is subject to an abuse of discretion standard of review." *England*, 940 So. 2d at 402. "[U]nless the 'judicial action is arbitrary, fanciful or unreasonable[,]'" "a trial court's ruling will be upheld." *Salazar*, 991 So. 2d at 372 (quoting *Trease v. State*, 768 So. 2d 1050, 1053 n.2 (Fla. 2000)).

With respect to a prosecutor's comments, a new trial is warranted if the prosecutor's comments (1) "deprive the defendant of a fair and impartial trial", (2) "materially contribute to the conviction"; (3) "be so harmful or fundamentally tainted as to require a new trial"; or otherwise "be so inflammatory that they might have influenced the jury to reach a more severe verdict" to justify a new trial. *Salazar*, 991 So. 2d at 372 (quoting *Spencer v. State*, 645 So. 2d 377, 383 (Fla. 1994)).

Given the presumption that juries follow curative instructions, and the high standard of review for such a claim even without § 2254(d)'s limitation, Petitioner cannot meet his burden on the prejudice prong. As Petitioner cannot satisfy either prong under *de novo* review, he certainly cannot meet his burden under § 2254(d). *See Trepal*, 684 F.3d at 1109-10. Accordingly, this claim should be denied.

G. Ground Six

As Ground Six, Petitioner claims his appellate counsel was ineffective for failing to challenge the trial court's response to a jury request for the transcript of Ms. Clowers's testimony. [ECF No. 1 at 17] (referring to [ECF No. 22-7 at 93-94]). Specifically, Petitioner asserts that the trial court should not have misled the jury into believing that read-backs or playbacks were prohibited and that the judge should have informed them of the possibility of a read-back. [ECF No. 1 at 17].

As a basis for denying the jury's request, the judge relied upon Florida Supreme Court precedent that holds a trial court may deny a jury's request for transcripts while encouraging the jury to use their own recollections provided that it also informs the jury that a read-back could be provided of any specific portions. [ECF No. 22-7 at 93-96] (referring to *Hazuri v. State*, 91 So.3d 836 (Fla. 2012)). The prosecution had no position on the issue, and defense counsel agreed the trial court's suggestion was "fine." [*Id.* at 94, 97].

The Court need not resolve whether § 2254(d) applies because the claim could easily be denied under a *de novo* standard of review. *See Trepal*, 684 F.3d at 1109-10. To review this claim, it necessarily requires an understanding of the procedural rules facing appellate counsel.

Under Florida law, "[e]rrors that have not been preserved by contemporaneous objection can be considered on direct appeal only if the error is fundamental." *Jackson v. State*, 983 So. 2d 562, 568 (Fla. 2008). Errors are fundamental if they go "to the foundation of the case" or otherwise go "to the merits of the cause of action." *Id.* (quoting *Hopkins v. State*, 632 So. 2d 1372, 1374 (Fla. 1994)) (internal quotation marks omitted). As Petitioner's trial counsel did not preserve this issue via contemporaneous objection, and instead agreed with the trial court's instruction, the claim could only be reviewed if it constitutes a fundamental error. *See Jackson*, 983 So. 2d at 568.

By trial counsel expressing agreement with the instruction, Petitioner's appellate counsel could not challenge any error that transpired at trial pursuant to Florida's invited-error doctrine.[3] *See Gonzalez v. State*, 136 So. 3d 1125, 1147 (Fla. 2014). Even if such an error did not fall under the invited-error doctrine and the trial court's instruction was erroneous, it would not qualify as a fundamental error under

---

[3] The invited-error doctrine provides that parties may not make or invite errors at trial and then take advantage of the errors on appeal. *Terry v. State*, 668 So. 2d 954, 962 (Fla. 1996).

Florida law. *Id.* at 1146-48 (holding a judge's denial of a jury's request for transcripts "of what the witnesses said" after defense counsel agreed that they should rely upon what they recalled does not qualify as a fundamental error); *see also Delestre v. State*, 103 So. 3d 1026, 1028 (Fla. 5th DCA 2012).

Petitioner, therefore, cannot show appellate counsel was ineffective for failing to raise a futile claim. *See Pinkney v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1290, 1297 (11th Cir. 2017) (failing to perform a futile act does not prove counsel's ineffectiveness). Because Petitioner cannot meet a *de novo* standard of review, *see Trepal*, 684 F.3d at 1109-10, he necessarily cannot meet his burden under § 2254(d) if it applies. The claim should be denied.

## H. Ground Seven

In Ground Seven, Petitioner claims appellate counsel was ineffective for failing to challenge the denial of the second motion for mistrial, which was based on a lay witness's opinion testimony as to Petitioner's guilt. [ECF No. 1 at 18]. More specifically, Petitioner is referring to the testimony provided by the victim's mother, Ms. Clowers, during cross-examination.

During the cross-examination of Ms. Clowers, the following transpired:

> [DEFENSE COUNSEL]: And they would say nasty things, you said, back and forth, to each other; right?
>
> [MS. CLOWERS]: Yes.

> [DEFENSE COUNSEL]: And, I know, Mr. Warfman said that, you know, Trenecia, at one point, would tell Corey she was going to "F" him up and things like that and Corey would say it back to her; right?
>
> [MS. CLOWERS]: Yes. But, that didn't give him the right to take her life.

[ECF No. 22-3 at 31]. Defense Counsel immediately requested and reserved a sidebar. [*Id.*]. The trial court then instructed the jury as follows: "Ladies and gentlemen, please disregard the last statement." [*Id.*]. After Ms. Clowers's testimony, defense counsel renewed the motion for mistrial arguing that Ms. Clowers knows Petitioner is in fact guilty or otherwise provided improper opinion testimony. [*Id.* at 54-56]. The motion was denied. [*Id.* at 56].

As previously mentioned, under Florida law, a motion for mistrial may only be granted when the error is so prejudicial as to vitiate the entire trial. *Salazar*, 991 So. 2d at 372. On appeal, the standard of review considers whether the trial court abused its discretion. *England*, 940 So. 2d at 402.

Had appellate counsel challenged this ruling, it would have likely failed on appeal. The trial court instructed the jury to disregard the statement immediately after it was made. Jurors, as this Report already explained, are presumed to follow instructions, including those requesting that they disregard certain remarks. *See, e.g.*, *Hammond v. Hall*, 586 F.3d 1289, 1334 (11th Cir. 2009). Ms. Clowers also testified that she did not see Petitioner kill her daughter. Given the presumption that jurors

follow instructions, and Ms. Clowers's admission that she did not see Petitioner kill her daughter, any error would not have been so great as to prejudice the entire trial. As Petitioner cannot satisfy the standard set forth under *Salazar*, he certainly cannot prove that failure to raise this claim on appeal caused prejudice under *Strickland*. Without prejudice demonstrated even under *de novo* review, Petitioner necessarily cannot meet his burden under § 2254(d). *See Trepal*, 684 F.3d at 1109-10. The Court need not address the performance prong, *see Dingle*, 480 F.3d at 1100, as the Claim should be denied.

I. Ground Eight

In Ground Eight, Petitioner claims that his newly-discovered-evidence claim in state court was timely raised and that the proposed testimony would have testified as to who actually shot the victim. [ECF No. 1 at 20]. Consistent with this Court's authority under Rule 4 of the Rules Governing Section 2254 Cases, *see Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651 (11th Cir. 2020) (explaining that Rule 4 permits courts to review whether the claims are legally insufficient on their face), this claim should be denied as not cognizable for federal habeas review.

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). When petitioners raise such claims of

newly-discovered evidence to prove they are actually innocent, the Court has denied them as non-cognizable. *See, e.g.*, *Overton v. Jones*, 155 F. Supp. 3d 1253, 1309 (S.D. Fla. 2016). As Petitioner did not allege an independent constitutional violation, habeas corpus relief is not warranted on this claim.

J. <u>Grounds Nine and Ten</u>

In Ground Nine, Petitioner claims the trial court committed reversible error by allowing *Williams* rule evidence to be admitted.[4] [ECF No. 1 at 22]. With respect to Ground Ten, Petitioner claims the circumstantial evidence against him was legally insufficient. [*Id.* at 23].

As previously mentioned, Respondent argues these claims were not properly exhausted. Although Petitioner raised both of these claims on direct appeal [ECF No. 21-3 at 31-40], he never cited any federal source of law in that proceeding. [*Id.* at 18-19, 31-40].

Grounds Nine and Ten were, therefore, not properly exhausted. *See e.g.*, *McNair v. Campbell*, 416 F.3d 1291, 1302-03 (11th Cir. 2005) (explaining, at a minimum, there should be some federal source of law to alert the state court that the claim raised is federal in nature to properly exhaust).

---

[4] *See generally Williams v. State*, 110 So. 2d 654 (Fla. 1959).

"[W]hen a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar." *Id.* at 1305.

Petitioner can no longer raise a federal version of Grounds Nine and Ten in state court, as claims that could have been raised on direct appeal cannot be raised during postconviction under Florida law. *See Spencer v. Sec'y, Fla. Dep't of Corr.*, 609 F.3d 1170, 1179 (11th Cir. 2010).

"This procedural bar may be overcome…only if [Petitioner] demonstrates both cause for the failure to raise the claims on direct appeal and actual prejudice, or demonstrates that a failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 1179-80 (internal quotation marks omitted). Petitioner is not entitled to relief on the merits in this proceeding if he cannot make that showing. *See id.* at 1179.

Where there was "something external" that cannot "fairly be attributed" to the litigant's conduct, which impeded a litigant's efforts to comply with the procedural rule, cause exists. *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (relying upon Coleman, 501 U.S. at 753). Petitioner has not provided an explanation to make a showing of cause.[5]

---

[5] Worth mentioning, "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation[.]" *Coleman v. Thompson*, 501 U.S. 722, 753 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012).

Under the miscarriage-of-justice exception, "actual innocence, if proved, serves as a gateway through which a [§ 2254] petitioner may pass whether the impediment is a procedural bar ... or ... expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (relying upon *House v. Bell*, 547 U.S. 518 (2006) and *Schlup v. Delo*, 513 U.S. 298 (1995)). Here, Petitioner does not rely on the actual innocence exception. Nor has he provided any new evidence to support that he is actually innocent. *See Schlup*, 513 U.S. at 316 (explaining "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation" will not allow a federal court to review the procedurally barred claim through this exception.).

 Because none of the equitable exceptions apply, Grounds Nine and Ten are procedurally barred and do not provide a basis for relief. *See Gilbert v. Sec'y, Fla. Dep't of Corr.*, 447 F. App'x 60, 61 (11th Cir. 2011).

## IX. Evidentiary Hearing

Pursuant to 28 U.S.C. § 2254(e)(2), federal courts should not hold evidentiary hearings whenever the applicant "failed to develop the factual basis of a claim in State court proceedings[.]" An exception exists, however. It applies when the claim relates to "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or the claim is otherwise based on "a factual predicate that could not have been previously

discovered" with due diligence. 28 U.S.C. § 2254(e)(2)(A). And yet, the facts underlying the claim must also "be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B).

Here, the state record provides all pertinent facts to resolve Petitioner's claims, demonstrating an evidentiary hearing in federal court is not needed. *See Schiro v. Landrigan*, 550 U.S. 465, 474 (2007) ("It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## X. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would

find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

After careful consideration of the record, this Court should not issue a certificate of appealability. If Petitioner disagrees, he may bring his argument to the attention of the District Judge in objections.

## XI. Recommendations and Conclusions

Based upon the foregoing it is recommended that the Petition be DENIED, [ECF No. 1]. It is further recommended that an evidentiary hearing be DENIED, a certificate of appealability NOT ISSUE, and the case be CLOSED.

Objections to this report may be filed with the District Judge within fourteen (14) days of receipt of a copy of the report. Failure to file timely objections shall bar petitioner from a *de novo* determination by the District Judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge, except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

Signed this 8th day of July, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

cc:    Corey C. Charlton
       551709
       Martin Correctional Institution
       Inmate Mail/Parcels
       1150 SW Allapattah Road
       Indiantown, FL 34956
       PRO SE

       Michael W. Mervine
       Office of the Attorney General
       Department of Legal Affairs
       444 Brickell Avenue, Suite 650
       Miami, FL 33131
       (305) 377-5441
       Fax: (305) 377-5655
       Email: CrimAppMia@MyFloridaLegal.com

       Noticing 2254 SAG Miami-Dade/Monroe
       Email: CrimAppMIA@MyFloridaLegal.com